IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **RACHEL STONE**<br>2709 Hampshire Road, Apt. 202<br>Cleveland Heights, OH 44106<br><br>    Plaintiff,<br><br>  v.<br><br>**CLEVELAND MUSEUM OF NATURAL HISTORY,**<br>1 Wade Oval Drive<br>Cleveland, OH 44106<br><br>    Defendant, | **CASE NO:**<br><br><br><br>**JUDGE**<br><br><br><br>**COMPLAINT (JURY DEMAND ENDORSED HEREON)** |

Now comes Plaintiff, Rachel Stone, by and through undersigned counsel, stating the following as her Complaint for retaliation in violation of the Civil Rights Act of 1964, as amended ("Title VII"), against the Cleveland Museum of Natural History.

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the claim is set forth pursuant to the law of the United States of America.

2. The Court has supplemental jurisdiction over Counts II, Plaintiff's state law claim, pursuant to 28 U.S.C. § 1367, because the claims arise out of the same set of operative facts as Count I.

3. Venue is proper pursuant to 28 U.S.C. § 1391 as the events giving rise to the cause

of action occurred in Cuyahoga County in the State of Ohio, within the jurisdiction of Northern District of Ohio, Eastern Division.

## PARTIES

4. Plaintiff Rachel Stone ("Plaintiff") is an adult individual and natural person residing in Cleveland Heights, Ohio.

5. At all relevant times, Plaintiff was an "employee" within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e, et seq., 29 U.S.C. § 203(e), the Ohio Constitution, and Ohio Revised Code § 4112.

6. Defendant Cleveland Museum of Natural History ("CMNH") is an entity residing in Cleveland, Ohio.

7. At all relevant times, Defendant was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e, et seq., 29 U.S.C. § 203(d), the Ohio Constitution, and Ohio Revised Code § 4112.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff timely filed charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and on February 13, 2023, the EEOC issued Plaintiff a Notice of Right to Sue, which Ms. Stone received by U.S. Mail on or about March 1, 2023. The Notice of Right to Sue is attached hereto as Exhibit 1.

9. Plaintiff has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

## FACTUAL ALLEGATIONS

10. Plaintiff began working for Defendant CMNH in 2020.

11. CMNH's employee handbook, excerpts of which are attached hereto as Exhibit 2, requires that employees report workplace relationships when it involves a supervisor and employees and merely "requests" any other workplace relationship be reported, but does not require any such reporting.

12. Ms. Stone had a coworker, Bort, with whom she engaged in a non-romantic sexual partnership between December 2021 and February 2022.

13. Ms. Stone and Bort were not in a romantic relationship and the partnership ended amicably. No report of this partnership was made to CMNH because neither Ms. Stone nor Bort were in a supervisory role with the other.

14. In February 2022, Bort was deported back to his nation of origin, Australia.

15. In June 2022, Bort was allowed to return to the country and resumed his employment with CMNH.

16. Bort began creating a hostile work environment at CMNH on the basis of sex.

17. On November 21, 2022, Ms. Stone, her advisor Nicole, and her coworker Natalie reported the hostile work environment to a CMNH supervisor named Gavin.

18. None of the sexually inappropriate comments made by Bort were related, in any way, to his partnership with Ms. Stone which had dissolved in February 2022.

19. Approximately two weeks after reporting the hostile work environment, Nicole learned that supervisor Gavin had not filed their complaint with human resources and so she filed her own complaint.

3

20. On or around December 9, 2022, Ms. Stone was interviewed by Sandy with CMNH human resources.

21. In the interview, Ms. Stone reported that Bort had made several inappropriate comments directed at her and heard inappropriate comments made by Bort directed at others.

22. On or around December 20, 2022, Ms. Stone was interviewed again by Sandy with CMNH human resources.

23. Sandy confronted Ms. Stone with the knowledge that Bort and she had been involved. Ms. Stone made clear that none of the inappropriate comments made by Bort were related in any way to the previous partnership and that she was not required to report the partnership because it was not a relationship, and not with a supervisor.

24. On or around January 6, 2023, Ms. Stone was interviewed again by Sandy with CMNH human resources and William Edwards, attorney for CMNH.

25. In the meeting, Ms. Stone confirmed that Bort and she had been in a partnership and that he had made several unrelated inappropriate sexual comments.

26. In the meeting, Sandy and Attorney Edwards demanded that Ms. Stone provide them with all text messages exchanged between her and Bort.

27. Ms. Stone stated that she would only agree to hand over those text messages if she was legally obliged to do so and that CMNH did not have the power to coerce her to produce those text messages.

28. In a January 9, 2023 text message, Sandy reiterated CMNH's demand for a copy of her text messages with Bort.

29. In a January 10, 2023 email, Attorney Edwards demanded both 1) all text messages

4

between Ms. Stone and Bort, and 2) all group text messages that included both Ms. Stone and Bort from January 2022 to the present.

30. In a January 11, 2023 email, Ms. Stone declined to voluntarily hand over the requested text messages and declared that she would only do so when she was legally obligated to do so.

31. On or around January 18, 2023, Sandy met with Ms. Stone and informed her that her employment was to be terminated immediately for failure to disclose a workplace relationship and insubordination for failure to produce the requested text messages.

32. On or around January 18, 2023, an email was sent to all CMNH staff that Bort was no longer employed by CMNH.

33. Ms. Stone engaged in protected activity by reporting a hostile work environment and voluntarily testifying in an investigation of a hostile work environment.

34. CMNH knew that she engaged in the protected activity because it was CMNH's supervisors to whom Ms. Stone testified and reported.

35. CMNH took materially adverse employment action against Ms. Stone by terminating her employment.

36. If not for Ms. Stone's testimony and report of a hostile work environment, CMNH would not have know of any partnership between Ms. Stone and Bort and would not have requested any text messages between Ms. Stone and Bort.

37. As a direct result of Ms. Stone's testimony and reporting, CMNH demanded access to documents it did not have a legal basis or right to, which resulted in the alleged insubordination when Ms. Stone refused to produce those text messages.

5

38. Ms. Stone's engagement in protected activity was the direct and/or proximate cause of the materially adverse employment action she suffered.

39. Ms. Stone's employment was terminated in retaliation for and because of her involvement in protected activities.

40. But for Ms. Stone's engagement in protected activity, she would not have been terminated for failing to disclose a relationship or insubordination.

41. Ms. Stone has suffered damages as a result of CMNH's unlawful retaliation including loss of pay, benefits, and attorneys' fees.

42. As a result, Ms. Stone demands back pay, front pay, compensatory and punitive damages, plus reasonable attorneys' fees.

## COUNT I: Retaliation in Violation of Title VII

43. Plaintiff incorporates the allegations contained above as if fully written verbatim herein.

44. Ms. Stone was engaged in protected activity by making a formal complaint to Defendant CMNH's agent, Gavin, and testifying before Defendant CMNH's agent, Sandy, in aid to an investigation of a coworker's unlawful, discriminatory actions based on gender.

45. Defendant CMNH knew, through its agents, that Ms. Stone was engaged in protected activity.

46. As a result of Ms. Stone's complaints and testimony, Defendant CMNH took materially adverse actions against Ms. Stone by terminating her employment with CMNH.

47. Defendant CMNH's adverse action constitutes retaliation.

48. Defendant CMNH's retaliatory actions were sufficient to deter a reasonable person

from engaging in protected activity under Title VII.

49. As a direct, legal and proximate result of Defendant CMNH's retaliation, Ms. Stone has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

50. Ms. Stone is entitled to their reasonable attorneys' fees plus experts' fees and costs under 42 U.S.C. §1988.

### COUNT II: Retaliation in Violation of Ohio Law

51. Plaintiff incorporates the allegations contained above as if fully written verbatim herein.

52. Ms. Stone was engaged in protected activity by making a formal complaint to Defendant CMNH's agent, Gavin, and testifying before Defendant CMNH's agent, Sandy, in aid to an investigation of a coworker's unlawful, discriminatory actions based on gender.

53. Defendant CMNH knew, through its agents, that Ms. Stone was engaged in protected activity.

54. As a result of Ms. Stone's complaints and testimony, Defendant CMNH took materially adverse actions against Ms. Stone by terminating her employment with CMNH.

55. Defendant CMNH's adverse action constitutes retaliation.

56. Defendant CMNH's retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity under Ohio Revised Code § 4112.

57. As a direct, legal and proximate result of Defendant CMNH's retaliation, Ms. Stone has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

58. Ms. Stone is entitled to their reasonable attorneys' fees plus experts' fees and costs under 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Rachel Stone prays for judgment in her favor, actual damages for unpaid compensation, back pay, front pay, unpaid benefits, compensatory and punitive damages, attorneys' fees, expert fees, court costs, pre- and post-judgment interest, and any other relief to which he may be entitled.

Respectfully Submitted,

/s/ Matthew T. Hurm, Esq.
Matthew T. Hurm, Esq. (0088818)
Hurm Law Firm, LLC
135 Southwood Rd.
Akron, OH 44313
(p) (216) 860-1922
(f) (216) 820-4347
matt@hurmlawfirm.com

*Counsel for Plaintiff Rachel Stone*

**JURY DEMAND**

A trial by jury is hereby demanded on all issues so triable.

Respectfully Submitted,

/s/ Matthew T. Hurm, Esq.
Matthew T. Hurm, Esq. (0088818)
Hurm Law Firm, LLC
135 Southwood Rd.
Akron, OH 44313
(p) (216) 860-1922
(f) (216) 820-4347
matt@hurmlawfirm.com

*Counsel for Plaintiff Rachel Stone*